520

CALIFORNIA STATE BOARD OF
EQUALIZATION, Appellant,

v.

COAST RADIO PRODUCTS, a copartner-
ship composed of Henry L. Smith and
Joseph Boroff, and Henry L. Smith and
Joseph Boroff, Appellees.

No. 14311.

United States Court of Appeals
Ninth Circuit.

Dec. 14, 1955.

---

Edmund G. Brown, Atty. Gen., Edward Sumner, Deputy Atty. Gen., State of California, for appellant.

Robert E. Rosskopf, Beverly Hills, Cal., for appellee.

Before STEPHENS, FEE, and CHAMBERS, Circuit Judges.

STEPHENS, Circuit Judge.

This is an appeal from an order of the district court affirming an order of a referee in bankruptcy permanently enjoining appellant Board of Equalization from collecting from the discharged appellee partnership or the discharged individual partners, sales tax indebtedness of $1,980.01, which was incurred prior to the date appellees were adjudicated bankrupts.

Prior to September 29, 1950, appellees Smith and Boroff were doing business as Coast Radio Products, a copartnership. On that date an involuntary petition in bankruptcy was filed in the United States District Court,[1] against the copartnership. Voluntary petitions in bankruptcy by said copartners were filed in the same court on December 13, 1950. Orders of adjudication were entered in all cases on the filing date. The part-

---

1. As authorized by the Act of July 1, 1898, c. 541, § 1, 30 Stat. 544, as amended; U.S.Code, Title XI, c. 1, § 1; see Title 11 U.S.C.A. § 1(10), as amended May 27, 1926, c. 406, § 1, 44 Stat. 662; June 7, 1934, c. 426, 48 Stat. 926; June 25, 1936, c. 804, 49 Stat. 1921; June 22, 1938, c. 575, § 1, 52 Stat. 840; June 28, 1946, c. 512, § 1, 60 Stat. 323; July 7, 1952, c. 579, § 1, 66 Stat. 420. Also see Title 11 U.S.C.A. § 11, as amended May 27, 1926, c. 406, § 2, 44 Stat. 662; June 22, 1938, c. 575, § 1, 52 Stat. 842; July 7, 1952, c. 579, § 2, 66 Stat. 420, from Act of July 1, 1898, c. 541, Sec. 2, 30 Stat. 544.

nership and the individual copartners were discharged on February 7, 1951, and March 8, 1951, respectively.

Schedules of Debts filed in the respective proceedings listed taxes due and owing to appellant under the California Sales and Use Tax Law, totaling $1,980.01. Although appellant received notice of the proceedings, it filed no claim for the above taxes within six months of the creditors' meeting.[2]

The first and final report of the Trustee reported that when reduced to cash the bankrupt's assets netted $17,126.63. After payment of tax claims (excepting the instant one) and prior labor claims, there remained as of April 21, 1953, the sum of $3,887.61. On July 29, 1952, the partnership filed a petition which alleged that appellant had sought and will continue to seek to effect collection of the $1,980.01 tax liability from the discharged appellees. The petition closed with a prayer that the petitioners be discharged from any liability to the Board of Equalization for sales taxes due before October 9, 1950, which were provable in bankruptcy, and that the Board of Equalization be forever enjoined from attempting to enforce against the bankrupts any sales tax claims provable in bankruptcy which were incurred before October 9, 1952.

After hearing, the referee concluded (a) that if the Board of Equalization had filed its claim for sales tax within the six months' period allowed by law,[3] its claim would have been paid in full; (b) it would be inequitable and unjust and would deny to bankrupts the benefits of the bankruptcy Act if the Board of Equalization were permitted to collect from discharged bankrupts the amount of sales tax which would have been paid from the bankrupt estate if the claim had been timely filed; and (c) by reason of the above, bankrupt Coast Radio Products, and bankrupts Smith and Boroff were entitled to an injunction enjoining the enforcement of any tax claims due from said bankrupts on or before October 20, 1950, to the extent that said claims were provable in bankruptcy. Upon the above grounds the injunction was granted as prayed. From an order of the district court affirming the action of the referee, this appeal is brought.

The question presented here is whether a referee in bankruptcy may enjoin a State from enforcing its non-dischargeable tax claim against after-acquired property of a discharged bankrupt if it did not file a timely claim against the bankrupt estate when there were funds on hand sufficient to fully satisfy said tax claim.

Appellant contends that the bankruptcy court lacks jurisdiction to affect in any way the after-acquired assets of a discharged bankrupt,[4] that any defense including discharge, to a creditor's suit against a discharged bankrupt upon a debt existing at the commencement of bankruptcy proceedings, is properly raised in the creditor's suit and not in the bankruptcy court,[5] that the actions of the referee herein constitute a suit

2. As provided for by the Act of July 1, 1898, c. 541, § 57, 30 Stat. 560; Feb. 5, 1903, c. 487, § 12, 32 Stat. 799; May 27, 1926, c. 406, § 13, 44 Stat. 666; June 22, 1938, c. 575, § 1, 52 Stat. 866; see Title 11 U.S.C.A. § 93, as amended July 7, 1952, c. 579, § 14, 66 Stat. 424.

3. See footnote 2 supra.

4. Citing Salsbury Motors v. United States, 9 Cir., 1954, 210 F.2d 171, 174, certiorari denied 347 U.S. 953, 74 S.Ct. 679, 98 L.Ed. 1099, which held after-acquired property of a discharged bankrupt not within the terms of an injunction issued by the bankruptcy court in that case.

5. Citing In re Devereaux, 2 Cir., 1935, 76 F.2d 522; In re Stoller, D.C.1938, 25 F.Supp. 226; Helms v. Holmes, 4 Cir., 1942, 129 F.2d 263, 141 A.L.R. 1367; Gathany v. Bishopp, 4 Cir., 1949, 177 F.2d 567; In re Innis, 7 Cir., 1944, 140 F.2d 479, certiorari denied 322 U.S. 736, 64 S.Ct. 1048, 88 L.Ed. 1569, each of which, while admitting the power of the bankruptcy court to enjoin attempted collection against a discharged bankrupt's after-acquired property, denied the injunction on the facts of the respective cases.

brought against the State of California without its permission as required by law.[6]

■■ We do not agree with the contention advanced by appellant that the bankruptcy court lacks power over after-acquired assets of a bankrupt so that the bankrupt's remedy against a pre-bankruptcy creditor's suit after discharge is limited to pleading the discharge in bankruptcy. Such a construction would seriously weaken the benefit of a discharge and impair the object of the Act which is to

"relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes."[7]

■ A perusal of the cases persuades us that the bankruptcy court generally has the power to enjoin an attempted collection of a pre-existing debt against after-acquired property in pursuance of its power to secure or preserve the fruits and advantages of its judgments or decrees.[8] Exercise of such injunctive powers of the bankruptcy court has been held especially applicable against those who pursue and harass a discharged bankrupt by suits in the state courts hoping by this method to circumvent the bankruptcy laws and recover their debt by reason of the bankrupt's ignorance of the necessity to plead his discharge in bar or by his fear of the financial burden and possible loss of employment often incident to defense of such actions.[9] Such proceedings encourage a multiplicity of suits and fail to provide the bankrupt with a speedy and adequate remedy. For this reason, exhaustion by the bankrupt of his State remedies is not a prerequisite to the exercise of the bankruptcy court's injunctive power.[10] But this is not to say that the exercise of such power is mandatory upon the bankruptcy court. It is permissive and should be exercised only in the sound discretion of the court. Injunctive relief may be obtained either by ancillary proceeding in equity or by motion

6. Section 6, Art. XX, California Constitution: "Suits may be brought against the State in such manner and in such courts as shall be directed by law."

7. Williams v. United States Fidelity & Guaranty Co., 1915, 236 U.S. 549, 554–555, 35 S.Ct. 289, 290, 59 L.Ed. 713, and cases there cited.

8. Local Loan v. Hunt, 1934, 292 U.S. 234, 239, 54 S.Ct. 695, 78 L.Ed. 1230, and cases cited at that page. See, also, Walmac Co. v. Isaacs, 1 Cir., 1955, 220 F.2d 108, at page 114, and cases cited; State Finance Co. v. Morrow, 10 Cir., 1954, 216 F.2d 676, at page 680, and cases cited; Sword Line, Inc., v. Industrial Com'r of State of New York, 2 Cir., 1954, 212 F.2d 865, and see cases at page 870; Halpert v. Engine Air Service, 2 Cir., 1954, 212 F.2d 860, 863; Evans v. Dearborn Machinery Movers Co., 6 Cir., 1953, 200 F.2d 125, 127; Berman v. Denver Tramway Corp., 10 Cir., 1952, 197 F.2d 946, at page 950, and cases cited; California State Board of Equalization v. Goggin, 9 Cir., 1951, 191 F.2d 726 and authority at page 728, 27 A.L.R.2d 1211; Gathany v. Bishopp

(In re Risser), 4 Cir., 1949, 177 F.2d 567, 568–569; In re Innis, 7 Cir., 1944, 140 F.2d 479, 481; Helms v. Holmes, 4 Cir., 1942, 129 F.2d 263, 269, 141 A.L.R. 1367; Davison-Paxon Co. v. Caldwell, 5 Cir., 1940, 115 F.2d 189, 190, 133 A.L.R. 432; Holmes v. Rowe, 9 Cir., 1938, 97 F.2d 537, 539; In re Devereaux, 2 Cir., 1935, 76 F.2d 522, 523; Seaboard Small Loan Corp. v. Ottinger, 4 Cir., 1931, 50 F.2d 856, 859, 77 A.L.R. 956; In re Patt, D.C.1941, 43 F.Supp. 754, 756; In re Stoller, D.C.1938, 25 F.Supp. 226, 227; In re Tillery, D.C.1936, 16 F.Supp. 877, 879; In re Cleapor, D.C.1936, 16 F. Supp. 481, 484; In re Swofford Bros. Dry Goods Co., D.C.W.D., Mo.1910, 180 F. 549, 554.

9. Seaboard Small Loan Co. v. Ottinger, 4 Cir., 1931, 50 F.2d 856, 77 A.L.R. 956, contains a discussion of such abuses and the necessity of injunctive relief to provide an adequate remedy to the discharged bankrupt who finds himself the unhappy object of such tactics.

10. Holmes v. Rowe, 9 Cir., 1938, 97 F.2d 537.

in the regular bankruptcy proceeding.[11] Cases cited [12] in support of appellant's contention that the bankruptcy court lacked jurisdiction are not controlling in this case since they are founded upon the existence of a plain, speedy and efficient remedy.[13] While on the facts presented therein, the remedy provided may have been adequate, in this instance it is not plain nor speedy nor efficient, and the cases are without application here. Nor, as appellant urges, does this proceeding constitute a suit against the state so as to come within the purview of Section 6, Art. XX of the California Constitution,[14] since:

> "The process of dealing with state tax assessments is one essential to the administration of a bankruptcy estate and does not amount to a suit against the state." [15]

Having established the general power of the referee to make an order enjoining collection of a pre-existent debt from the after-acquired property of the discharged bankrupts, we will now pass to a consideration of the propriety of his exercise of the power in this case.

■■ A discharge in bankruptcy releases a bankrupt from all of his provable debts with certain exceptions, foremost of which is taxes due to the United States or to any State, county, district, or municipality.[16] Such debts,[17] are not affected by discharge and may be collected by a subsequent action against after-acquired property,[18] although all or part of such debts may be collected by participation in the bankrupt estate.[19] Collection of a portion of such debt by dividend does not bar the collection of the unpaid balance by subsequent action.

Appellees here do not contend that tax claims are dischargeable in bankruptcy, but they do contend that where, as here, the State was scheduled as a creditor, and assets were sufficient to pay its claim in full, the State was negligent in failing to file its claim, and the bankrupts should, in equity, be entitled to the same protection that they would have had under the Act if the claim had been properly filed and paid. This, in effect, raises the question of whether by its conduct a taxing body may be estopped to collect a tax liability.[20]

11. Seaboard Small Loan Co. et al. v. Ottinger, 4 Cir., 1931, 50 F.2d 856, 860, 77 A.L.R. 956.

12. Nevada-California Electric Corp. v. Corbett, D.C.N.D.Cal.1938, 22 F.Supp. 951; Corbett v. Printers & Publishers Corp., 9 Cir., 1942, 127 F.2d 195.

13. See Title 28 U.S.C.A. § 1341, June 25, 1948, c. 646, 62 Stat. 932; based on Title 28 U.S.C., 1940 ed., § 41(1) (Mar. 3, 1911, c. 231, § 24, par. 1, 36 Stat. 1091 [derived from R.S. §§ 563, 629]; May 14, 1934, c. 283, § 1, 48 Stat. 775; Aug. 21, 1937, c. 726, § 1, 50 Stat. 738; Apr. 20, 1940, c. 117, 54 Stat. 143).

14. See footnote 6 supra.

15. California State Board of Equalization v. Goggin, 9 Cir., 1951, 191 F.2d 726, 728.

16. Title 11 U.S.C.A. § 35, sub. a(1), July 1, 1898, c. 541, § 17, 30 Stat. 550; Feb. 5, 1903, c. 487, § 5, 32 Stat. 798; Mar. 2, 1917, c. 153, 39 Stat. 999; Jan. 7, 1922, c. 22, 42 Stat. 354; June 22, 1938, c. 575, § 1, 52 Stat. 851.

17. In California taxes due under the Sales and Use Tax law are granted a priority in payment and are claims rather than liens until recordation of a certificate of delinquency. See Revenue and Taxation Code, §§ 6756, 6757.

18. Glass City Bank v. United States, 1945, 326 U.S. 265, 66 S.Ct. 108, 90 L.Ed. 56; Salsbury Motors v. United States, 9 Cir., 1954, 210 F.2d 171; Citizens Nat. Trust & Savings Bank of L. A. v. United States, 9 Cir., 1943, 135 F.2d 527; Katzenstein v. Reid Murdock & Co., 1905, 41 Tex.Civ.App. 106, 91 S.W. 360; 7 Remington on Bankruptcy, 5th Ed. § 3445, page 701.

19. 7 Remington on Bankruptcy, 5th Ed., § 3446, p. 702, citing Schneck v. Lewis, 121 Misc. 370, 201 N.Y.S. 282, 1 Amer. Bankr.Rep.,N.S., 568, affirmed without opinion, 210 App.Div. 845, 206 N.Y.S. 958.

20. In Sweets Company of America v. C. I. R., 2 Cir., 1930, 40 F.2d 436, 438, the court raised this question but, in deciding the case on other grounds, refused to answer it.

In California it seems established that while the State and municipal corporations, in the exercise of public rights, are not impliedly within ordinary limitations statutes, nonetheless under certain rare circumstances where justice requires it, an estoppel *in pais* may be asserted even against the public.[21] The cited cases make it clear that each case wherein an estoppel is sought to be set up against the government must be decided on its facts. An estoppel arises where one party by concealment or false representation intentionally deceives another party as to the true state of the facts to the detriment of the second party. Four elements are necessary: "(1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury."[22]

In considering appellant's actions in the collection of its tax indebtedness from appellees, it must be realized that at the time of the bankruptcy, appellant could pursue alternative courses: It could either file its claim in the bankrupt estate to secure payment from the proceeds thereof or it could rely upon the non-dischargeable nature of the debt, ignore the proceedings and bring an action to collect from appellees after-acquired property. It was in no-wise obligated to take the former course merely because there happened to be sufficient funds in the estate to satisfy the claim in full. To so hold would be to read by implication into the bankruptcy law the requirement that a non-dischargeable tax debt is non-dischargeable only to the extent that it could not have been satisfied by filing a claim within six months after the first meeting of creditors. Such an interpretation would have the effect of requiring the government to determine the correct tax finally .due within a six-month period. Experience shows governmental revenue agencies by reason of the volume of business handled are not always so ideally swift or accurate. The action of the state in choosing one of two courses legitimately open to it for collection of revenues certainly is not conduct such as will permit an estoppel to be asserted as a bar to attempted collection.

As stated by the California District Court of Appeal, "It may be added that the doctrine of estoppel is not to be lightly invoked against the exercise of the sovereign power of the state to levy and collect taxes for the support of the government. This authority is so important and commanding that, assured-

---

21. Lorenson v. City of Los Angeles, 1953, 41 Cal.2d 334, 260 P.2d 49, 53; Farrell v. Placer County, 1944, 23 Cal.2d 624, 145 P.2d 570, 572, 153 A.L.R. 323, where it is said: " 'If we say with Mr. Justice Holmes, "men must turn square corners when they deal with the Government", it is hard to see why the government should not be held to a like standard of rectangular rectitude when dealing with its citizens.' " See, too, La Societe Francaise De Bienfaisance Mutuelle v. California Employment Com'r, 1943, 56 Cal.App.2d 534, 133 P.2d 47, 58 (estoppel against the government not limited to the tax field); City of Los Angeles v. Los Angeles County, 1937, 9 Cal.2d 624, 72 P.2d 138, 141, 113 A.L.R. 370; Times-Mirror Co. v. Superior Court in and for Los Angeles County, 1935, 3 Cal. 2d 309, 44 P.2d 547, 556, 557; County of Los Angeles v. Cline, 1921, 185 Cal. 299, 306, 197 P. 67; Outer Harbor Dock & Wharf Co. v. City of Los Angeles, 1920, 49 Cal.App. 120, 193 P. 137; City of Los Angeles v. Cohn, 1894, 101 Cal. 373, 376, 35 P. 1002; City of Fresno v. Fresno Canal & Irrigation Company, 1893, 98 Cal. 179, 182 et seq., 32 P. 943.

22. 18 Cal.Jur.2d 406. See, also, § 1962 (3), C.C.P.: "Whenever a party has, by his own declaration, act, or omission, intentionally and deliberately led another to believe a particular thing true, and to act upon such belief, he cannot, in any litigation arising out of such declaration, act, or omission, be permitted to falsify it." See *Safway Steel Products v. Lefever*, 1953, 117 Cal.App.2d 489, 256 P. 2d 32, 33.

ly, it cannot be successfully challenged upon the showing made herein. There may be instances of such gross injustice * * * wherein it would be proper to say that the government is estopped to claim a tax, but, ordinarily, where a mistake is made in the assessment or levy or an unjust burden has been imposed, the aggrieved party, in order to obtain relief, must pursue the remedy provided by the statute." [23]

No estoppel can be raised against the State's enforcement of its non-dischargeable tax debt, consequently the referee was in error in issuing the injunction. The orders of the referee and of the district court are reversed.

23. Outer Harbor Dock & Wharf Company v. City of Los Angeles, 1920, 49 Cal.App. 120, 133, 193 P. 137, 142.