In re William Thomas LETTERMAN, individually and doing business as Letterman Construction, Solano Construction, Debtor.

William Thomas LETTERMAN, individually and doing business as Letterman Construction, Solano Construction, Plaintiff,

v.

CARPENTERS 46 NORTHERN CALIFORNIA COUNTIES CONFERENCE BOARD, Carpenters Local Union No. 180, Defendants.

Bankruptcy No. BKS 76–959P.

United States Bankruptcy Court, E.D. California.

April 28, 1983.

Roxanne T. Daneri, Miller, Good & Daneri, Sacramento, Cal., for Letterman.

Vincent A. Harrington, Jr., VanBourg, Allen, Weinberg & Roger, P.C., San Francisco, Cal., for Carpenters Local 180 and Carpenters 46 Northern Calif. Counties Conf. Bd.

## MEMORANDUM OPINION AND DECISION

LOREN S. DAHL, Bankruptcy Judge.

This adversary proceeding came on for trial November 4, 1982; testimony was adduced, evidence admitted, oral arguments presented and thereafter submitted on briefs.

The plaintiff (LETTERMAN) to this action is seeking injunctive relief against the defendants (UNION) relating to an obligation alleged to have been discharged on August 19, 1976, by the Bankruptcy Court. LETTERMAN contends that the collective bargaining agreement he had signed with the UNION, a memorandum to be bound by the master agreement, was rejected and discharged in the bankruptcy proceedings and that attempts by the UNION to enforce any rights arising under the agreement before the National Labor Relations Board (NLRB) can be enjoined. The UNION objects to LETTERMAN'S complaint on two grounds. First, that the issues raised by LETTERMAN are matters that should properly be determined by the NLRB as provided for in the Labor Management Relations Act, and therefore this court lacks jurisdiction to proceed; and second, LETTERMAN'S failure to schedule the collective bargaining agreement and the UNION precludes a discharge of the obligation.

In first addressing the issue of jurisdiction, this court believes that the de-

fendants have confused the areas of expertise Congress has sought to establish in enacting the Bankruptcy Act and the Labor Management Relations Act (LMRA). The determination of rights arising under provisions of the LMRA is left to the NLRB, 29 U.S.C. Section 160. Thus, if the plaintiff were seeking a court determination on an allegation of lack of good faith in bargaining, the NLRB has the expertise to determine what is the requisite good faith required. However, LETTERMAN has sought a determination by this court of whether or not his obligations under the collective bargaining agreement were discharged in his bankruptcy proceedings, and not what the respective rights of the parties are under the various terms of the agreement. It has been clearly decided in the Ninth Circuit that collective bargaining agreements are executory contracts and as such are subject to rejection and discharge in bankruptcy. *Local Joint Executive Board, AFL–CIO v. Hotel Circle, Inc.,* 613 F.2d 210 (9th Cir.1980). Further, when a creditor ignores the discharge of a bankrupt, an injunction may properly be issued to protect the fresh start of a bankrupt from being whipsawed in abortive attempts at collecting the discharged debt. *California State Board of Equalization v. Coast Radio Products,* 228 F.2d 520 (9th Cir.1955). Therefore, this court holds that jurisdiction exists to determine whether or not a collective bargaining agreement was rejected as an executory contract and all obligations thereunder discharged in a bankruptcy proceeding.

■ The second issue raised by the UNION is whether or not a failure on the part of LETTERMAN to schedule the agreement or list the UNION as a creditor in the bankruptcy prevents a discharge of the obligation. Section 17(a)(3) of the Bankruptcy Act expressly provides that:

a discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in all or part, except such as ... (3) have not been duly scheduled in time for proof and allowance, with the name of the creditor, if known to the bankrupt, unless such creditor had notice or actual knowledge of the proceeding in bankruptcy; ....

MR. LETTERMAN'S contract and business dealings with the UNION had been conducted by Gordon Buck, assistant business agent for Local No. 180, including signing the collective bargaining agreement on July 2, 1974. LETTERMAN filed his bankruptcy petition April 2, 1976; the first meeting of creditors took place April 23, 1976; and the last day to file claims was October 23, 1976. All contract negotiations for the UNION are conducted by the assistant business agent.

In addition to their business relationship, LETTERMAN and Buck are related by marriage and Gordon Buck's son has worked for LETTERMAN during the post-discharge period. MR. LETTERMAN testified that just prior to his filing bankruptcy he discussed such plans with Gordon Buck at a family gathering during a holiday. Subsequent to his filing the petition, LETTERMAN testified that he discussed his actual filing of bankruptcy with Buck on two occasions, Easter Sunday, April 18, 1976, and during the Summer of 1976.

After the Summer of 1976, the UNION stopped sending LETTERMAN UNION benefit forms as required under the collective bargaining agreement. In 1981, they resumed sending these forms and in 1982 filed a grievance letter for LETTERMAN'S failure to abide by the 1974 agreement. During the 1977–81 period, the UNION, through their agent Buck, was aware that LETTERMAN was employing non-UNION construction workers and not paying into the UNION benefit fund.

It is clear that the UNION'S representative, Gordon Buck, had actual knowledge that the plaintiff had filed bankruptcy, discussed it with him, and had the opportunity to request additional information. Notice delivered to the UNION'S representative is notice to the UNION. Since actual knowledge existed in sufficient time for the UNION to present any claim they believe existed under the contract, Section 17 of the Act mandates discharge of obligations incurred under a rejected contract.

Section 70(b) of the Act provides that failure of a trustee to act to accept or reject an executory contract within statutory periods shall be deemed to be a rejection. In this case the trustee never acted to affirm or reject the agreement. The UNION contends that the failure of LETTERMAN to schedule the agreement precludes the presumption of rejection. A Chapter VII proceeding seeks to liquidate the assets of the bankrupt; it does not preserve an ongoing arrangement to continue the existence of the pre-petition bankrupt. There is no benefit to the estate in a Chapter VII liquidation of a contract that imposes burdens on the pre-petition bankrupt. Therefore, the rejection of this contract through non-action was proper. Further, the nonscheduling of the contract as depriving the trustee of the opportunity to assume the contract is an issue properly raised by the trustee, not a creditor attempting to impose pre-petition burdens on a post-discharge individual.

Therefore, this court holds that the August 19, 1976, discharge in Bankruptcy for MR. LETTERMAN included the discharge of any and all obligations arising under the collective bargaining entered into with the defendants in 1974. Gordon Buck, the assistant business agent for Carpenters Local Union No. 180, negotiated the agreement and conducted all UNION business with MR. LETTERMAN. Knowledge of the bankruptcy by Mr. Buck was knowledge by the UNION of the bankruptcy. It is further ordered that the UNION is enjoined from any acts directed at enforcing rights alleged to exist under this rejected contract.

This Memorandum Opinion and Decision shall constitute findings of fact and conclusions of law. Counsel for plaintiff-debtor is requested to prepare and submit a judgment consistent with this Memorandum Opinion and Decision.